PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1336

———

UNITED STATES OF AMERICA

v.

TERRANCE ROSS WILLAMAN,

Appellant

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 04-00028-1E)
Honorable Maurice B. Cohill, Jr., District Judge

———

Submitted under Third Circuit LAR 34.1(a)
December 9, 2005

BEFORE: RENDELL, FISHER, and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Filed: February 17, 2006)

———

Mary Beth Buchanan
United States Attorney
Laura Schleich Irwin
Assistant United States Attorney
700 Grant Street
Suite 400
Pittsburgh, PA 15219

   <u>Attorneys for Appellee</u>

Terrance Ross Willaman #20193-068
Federal Correctional Institution

Box 1000
Morgantown, WV 26507

    Appellant Pro se

OPINION OF THE COURT

    GREENBERG, Circuit Judge.

## I. INTRODUCTION

    This matter comes on before this court on defendant Terrance Ross Willaman's appeal from a judgment of conviction and sentence entered on January 27, 2005, in the district court.[1] The case originated on March 26, 2004, when Maurice Ferentino, an ATF agent, and two other federal agents approached Willaman at a hotel in Erie, Pennsylvania, where he was staying with his wife. Ferentino, who had obtained information that Willaman possessed a machine gun, at that time intended to serve a grand jury subpoena on him, apparently related to an ongoing investigation regarding weapons matters.[2] Willaman admitted to Ferentino at the hotel that he possessed a machine gun but told Ferentino that he would turn it over to the agents. Willaman and the agents subsequently left the hotel in separate cars to retrieve the weapon at Willaman's residence. Once they arrived at the residence, he dug up the machine gun from the place where he had buried it, and the agents took possession of it. Nevertheless, notwithstanding Willaman's apparent criminal conduct, Ferentino twice informed him that he was free to go at any time. Moreover, Willaman has acknowledged that he was not coerced or treated badly in any way by the agents at his residence.

    On May 11, 2004, a grand jury indicted Willaman for knowingly and unlawfully possessing a firearm in violation of 26 U.S.C. § 5861(d), and, on September 15, 2004, a grand jury returned a

---

[1] The district court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.

[2] Ferentino recently had arrested Darrell Sivik who informed Ferentino that he had transferred a machine gun to Willaman.

2

superseding indictment charging Willaman with knowingly and unlawfully possessing a machine gun in violation of 18 U.S.C. § 922(o)(1). Following the original indictment, Willaman appeared before a magistrate-judge on May 12, 2004, at which time she set bail. Nevertheless, Willaman was not arraigned until May 17, 2004, at which time he pleaded not guilty. On May 25, 2004, eight days after his arraignment, Willaman filed several pre-trial motions: (1) a motion to dismiss the indictment under Federal Criminal Rule 12(b)(2); (2) a motion to dismiss and a motion to suppress statements and evidence based on alleged violations of the First, Second, Fourth, and Fifth Amendments; (3) a motion to dismiss based on double jeopardy; and (4) a motion seeking to have the court instruct the jury that it could nullify the effect of the law in this case. The district court denied these four motions on August 18, 2004.

The trial in this case commenced on October 19, 2004. Immediately prior to the trial, Willaman unsuccessfully moved to dismiss the indictment based on asserted Speedy Trial Act, 18 U.S.C. § 3161 et seq., violations. At the trial's conclusion the jury found Willaman guilty on the superseding indictment. The court subsequently sentenced Willaman to a custodial term of 27 months to be followed by a three-year period of supervised release. Willaman timely appealed.

## II.  DISCUSSION

A. <u>Second Amendment</u>

Willaman first argues that 18 U.S.C. § 922 ("section 922") violates the Second Amendment, and that "Congress had no right to amend the Second Amendment merely by legislation," Reply Br. at 7. Thus, in his view, the district court should have dismissed the indictment and allowed him to make a jury nullification argument. We review the district court's order upholding the constitutionality of section 922 and refusing to dismiss the indictment or allow a jury nullification argument on a plenary basis. See <u>United States v. Rybar</u>, 103 F.3d 273, 275 (3d Cir. 1996). We will not linger on this point inasmuch as a number of our cases, including <u>Rybar</u> in which we held that "this court has on several occasions emphasized that the Second Amendment furnishes no absolute right to firearms," 103 F.3d at 286, foreclose Willaman's Second Amendment arguments. Though

Willaman argues that Rybar "is simply bad law," Reply Br. at 8, plainly it is binding on this panel. See Third Circuit I.O.P. 9.1.

B.  Speedy Trial Act

Next, Willaman argues that he was denied the right to a speedy trial under 18 U.S.C. § 3161(c)(1) ("section 3161(c)(1)"), a section of the Speedy Trial Act. Willaman asserts that "[e]ven excluding the time of filing and ruling on pretrial motions," more than 100 days passed between his arraignment and the commencement of his trial, which exceeded the 70 days allowed under section 3161(c)(1). App. at 22. We exercise plenary review over the district court's application of the Speedy Trial Act. See United States v. Hamilton, 46 F.3d 271, 273 (3d Cir. 1995).

The Speedy Trial Act provides that if a plea of not guilty is entered, the trial of a defendant charged in an information or indictment "shall commence within seventy days from the filing date (and making public) of the information or indictment or from the date the defendant has appeared before a judicial officer of the court in which the charge is pending, whichever date last occurs." Section 3161(c)(1); Gov't of Virgin Islands v. Duberry, 923 F.2d 317, 320 (3d Cir. 1991). However, delay during the time between the filing of a pretrial motion "through the conclusion of the hearing on, or other prompt disposition of, such motion" is excluded from the computation of Speedy Trial Act time. Section 3161(h)(1)(F); see United States v. Arbelaez, 7 F.3d 344, 347 (3d Cir. 1993).

Inasmuch as Willaman did not appear before a judicial officer prior to his original indictment, his arraignment on May 17, 2004, at which time he pleaded not guilty, constituted his initial appearance for Speedy Trial Act purposes, and thus that appearance triggered the running of the Speedy Trial Act 70-day time period. Our conclusion on this point is in harmony with our opinion in United States v. Carrasquillo, 667 F.2d 382, 384 (3d Cir. 1981), in which we said that "[w]hen there is no [pre-indictment] appearance because an information or indictment is the first step in a criminal case, then postindictment arraignment will be the relevant 'last occurring' date." (emphasis added).[3]  We recognize that Willaman physically appeared

---

[3] We realize that the statement in Carrasquillo that we quote is dictum as in that case there was a pre-indictment appearance so the indictment started the 70-day clock.

before a magistrate judge on May 12, 2004, at which time she set bail, and we further recognize that section 3161(c)(1) indicates that the 70-day clock runs from the time the defendant "has appeared" before a judicial officer.  Nevertheless, inasmuch as Willaman did not plead on May 12, 2004, the Speedy Trial clock did not begin to run until May 17, 2004, when he was arraigned and pleaded not guilty as Carrasquillo indicated that an arraignment triggers the running of the 70-day period.  See also United States v. Zandi, 769 F.2d 229, 233 (4th Cir. 1985) ("Since the appellants, in the instant case, appeared before a judicial officer after the date of the indictment, the dates of arraignment, and not the date of indictment, are relevant to our Speedy Trial inquiry.") (emphasis partially added); United States v. Haiges, 688 F.2d 1273, 1274 (9th Cir. 1982) ("When a defendant is indicted prior to his arrest, the seventy-day pretrial period runs from the date of his arraignment.") (emphasis added).  In this regard we point out that under Federal Rule of Criminal Procedure 10(a) an arraignment requires the court to ask "the defendant to plead to the indictment or information," an event that occurred here on May 17, 2004.

We have not overlooked the arguable anomaly in the distinction between the effect of a defendant's pre-indictment and post-indictment appearance under section 3161(c)(1).  After all, under Carrasquillo a defendant's pre-indictment physical appearance before a magistrate-judge will constitute a defendant's "appearance before a judicial officer," 667 F.2d at 384, so that his subsequent indictment will trigger the running of the 70-day period even though he could not have pleaded before his indictment and thus could not have been arraigned at his appearance before his indictment.[4]  Yet under our result a post-indictment physical appearance will not trigger the running of the 70-day clock until the defendant pleads, or at least is asked to do so, because in the absence of that request he will not have been arraigned.

Nevertheless we are satisfied that the distinction is justified.

---

[4]Federal Rule of Criminal Procedure 5(d)(4), dealing with initial appearances, provides that in a felony case "[a] defendant may be asked to plead only under Rule 10," which, in turn, sets forth that at an arraignment the court asks "the defendant to plead to the indictment or information." Fed. R. Crim. P. 10(a)(3).  Thus, in this felony case in which the prosecution was by an indictment, Willaman could not have been arraigned before his indictment.

5

As we indicated in Carrasquillo, the courts are required to treat an indictment of a defendant as the triggering event for running the clock under section 3161(c)(1) when a defendant has appeared before a judicial officer prior to indictment because otherwise "the date of an indictment could never be the date that 'last occurs' under section 3161(c)(1)," 667 F.2d at 384, so that the choice of triggering events between when the defendant "has appeared" or is indicted would be superfluous. On the other hand, if the defendant has not physically appeared before a judicial officer prior to indictment, as is the case here, then the indictment never can be the triggering event under section 3161(c)(1). Consequently, a court has flexibility in determining what Congress meant when it used the words "has appeared" in a case in which a defendant's first appearance is after his indictment that a court could not have when the defendant physically has appeared before a judicial officer prior to his indictment.

We think that it is logical to hold that Congress intended when a defendant's first appearance before a judicial officer is after an indictment for purposes of section 3161(c)(1), the appearance must be an arraignment to trigger the 70-day period. That result is consistent with section 3161(c)(1) as the section, by its terms, is applicable only in a "case in which a plea of not guilty is entered" and until the arraignment there could not have been a plea. Moreover, until the plea is entered the parties cannot know whether section 3161(c)(1) can become implicated in the case as in the absence of a not guilty plea there will not be a trial.[5] Finally, we point out that the time interval between a defendant's post-indictment appearance that is something less than an arraignment and an actual arraignment is not likely to be great. Indeed, in this case the period was only five days. Thus, we are comfortable with our result which is compatible with section 3161(c)(1).[6]

---

[5]We understand that this reasoning cannot apply when the defendant's first appearance is before the indictment but this consequence of section 3161(c)(1) is unavoidable in view of the meaning of section 3161(c)(1) as explained in Carrasquillo.

[6]The government has not contended that the return of the superseding indictment started the running of the Speedy Trial Act 70-day period anew and does not contend that by waiting until immediately prior to the trial to move to dismiss Willaman waived his Speedy Trial Act dismissal argument. Accordingly, we have not considered these possible arguments.

Of course, in this case the period between Willaman's arraignment on May 17, 2004, and the commencement of his trial on October 19, 2004, far exceeded 70 days. But as we have indicated, on May 25, 2004, eight days after his arraignment, Willaman filed several pretrial motions. As we also have indicated the filing of a pretrial motion tolls the running of the 70-day period. Consequently, the running of the 70-day clock was tolled from May 25, 2004, until August 18, 2004, when the court denied the motions. Willaman's trial then commenced on October 19, 2004, 61 days after August 18, 2004. Those 61 days coupled with the seven days that elapsed between Willaman's arraignment on May 17, 2004, and his filing pretrial motions on May 25, 2004, do not exceed the 70-day time limit under the Act as only 68 non-excludable days passed before the trial started. See United States v. Yunis, 723 F.2d 795, 797 (11th Cir. 1984) ("In calculating includable time [for Speedy Trial Act purposes] both the date on which an event occurs or a motion is filed and the date on which the court disposes of a motion are excluded."). Accordingly, Willaman's trial commenced within the 70-day period the Speedy Trial Act allows, and we reject his contentions under that statute.

C. Motion to Suppress

Next, Willaman argues that the district court erred in denying his motion to suppress statements and evidence on the grounds that they were obtained in violation of the Fourth and Fifth Amendments. In reviewing the district court's denial of Willaman's motion to suppress, "we exercise plenary review with respect to the district court's determination as to whether the police conduct found to have occurred constitutes custodial interrogation under all the circumstances of the case." United States v. Leese, 176 F.3d 740, 741 (3d Cir. 1999).

A person is in custody when he either is arrested formally or his freedom of movement is restricted to "the degree associated with a formal arrest." Id. at 743 (citation and internal quotation marks omitted). For a person to be in custody when he has not been arrested, "something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so." Steigler v. Anderson, 496 F.2d 793, 799 (3d Cir. 1974) (quoting United States v. Hall, 421 F.2d 540, 545 (2d Cir. 1969)). Thus, "police officers are not required to administer Miranda warnings to everyone whom they question." Oregon v.

7

Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 714 (1977).  Miranda, of course, requires warnings only when the person the police are questioning is in custody.  Miranda v. Arizona, 384 U.S. 436, 468, 86 S.Ct. 1602, 1624 (1966).

Courts consider a variety of factors when determining if a person was in custody, including: (1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning.  See United States v. Czichray, 378 F.3d 822, 827 (8th Cir. 2004); United States v. Hayden, 260 F.3d 1062, 1066 (9th Cir. 2001); United States v. Crossley, 224 F.3d 847, 861 (6th Cir. 2000).

Here, Ferentino twice told Willaman that he was free to leave.  Furthermore, Willaman turned the machine gun over to authorities while at his own residence, after leading the federal agents to his premises in his own vehicle.  See United States v. Czichray, 378 F.3d at 826 ("When a person is questioned on his own turf, . . . the surroundings are not indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation.") (emphasis added) (citations and internal quotation marks omitted).  While we recognize that Willaman contends that Ferentino said that they "could do it the hard way or the easy way," at the hotel with respect to recovering the machine gun, and showed Willaman a newspaper photo of a raid taking place, these circumstances do not render the circumstances surrounding his interrogation "custodial."  Moreover, the record does not show that the agents used physical force or restrain or verbally intimidate Willaman nor did they display weapons or interrogate him at length.

Finally, we see no basis from the record to conclude that there were other circumstances indicating that Willaman was the subject of a custodial interrogation.  Therefore, it would be unreasonable to conclude that Willaman's incriminating statements to the federal agents were not freely and voluntarily made at a time that he was not in custody or that he did not freely and voluntarily turn the machine gun over to the agents.  Of course, in these circumstances Miranda is not implicated.  Accordingly, his statements and the physical evidence were not obtained in violation of his Fourth or Fifth Amendment

rights.

D.  Grand Jury Indictment

Finally, Willaman argues that the grand jury did not make a "preliminary investigation" and that by reason of this failure the indictment against him must be dismissed.  He seems to predicate this argument on the point that the foreperson of the grand jury did not sign the indictment.[7]  We are exercising plenary review on this issue.  See United States v. Irorere, 228 F.3d 816, 830 (7th Cir. 2000).

It is true that the Federal Rules of Criminal Procedure state that indictments are to be signed by both the foreperson of the grand jury and by an attorney for the government.  See Fed. R. Crim. P. 6(c) ("The foreperson . . . will sign all indictments."); Fed. R. Crim. P. 7(c)(1) ("The indictment . . . must be signed by the attorney for the government.").  Nonetheless, the Supreme Court has indicated that the "foreman's duty to sign the indictment is a formality, for the absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the indictment."  Hobby v. United States, 468 U.S. 339, 345, 104 S.Ct. 3093, 3096 (1984); see also Frisbie v. United States, 157 U.S. 160, 163-65, 15 S.Ct. 586, 587-88 (1895) (failure of grand jury foreman to sign indictment is nonfatal irregularity).

In this case we see no reason to believe that the indictment on which Willaman was tried was not bona fide or that the absence of the foreperson's signature prejudiced Willaman.  Consequently, we regard the failure of the grand jury foreperson to sign the indictment as a mere technical deficiency, and thus conclude that Willaman's challenge to the sufficiency of the indictment does not raise an issue entitling him to relief.[8]  See Irorere, 228 F.3d at 831.

---

[7]The foreperson did not sign either the original or superseding indictment.

[8]Willaman has filed a motion asking us to take judicial notice of an advertisement in a publication entitled Shotgun News.  We deny this motion as it is without merit inasmuch as the advertisement merely reflects the views of its author and the allegations in it do not set forth facts of which we may take judicial notice.  See Buczek v. Cont'l Cas. Ins. Co., 378 F.3d 284, 291 (3d Cir. 2004) (testimony that 90-mile-per-hour winds sometimes hit the New Jersey shore is a "disputed fact is not one that is appropriate for judicial notice").

III. CONCLUSION

For the foregoing reasons the judgment of conviction and sentence entered January 27, 2005, will be affirmed.

---

In our disposition of this case we have recognized that Willaman's arguments are somewhat broader than the way we restate them. Nevertheless, we have considered all his points and find that they either are subsumed in the points as we have restated them or are without merit.